## EAST TENN., VA. & GA. RAILWAY CO. v. HYDE:

The evidence being conflicting and the jury having credited that in behalf of the plaintiff, and that, if true, being sufficient ; the presiding judge having approved the finding, and the verdict not being so excessive as to shock the moral sense, no legal cause exists for ordering a new trial by the Supreme Court.　*Judgment affirmed.*
August 1, 1892.

Railroad passenger. Damages. Before Judge MEYERHARDT. City court of Floyd county. June term, 1891.

Hyde sued the railroad company for damages, and obtained a verdict for $2,433.35. The defendant moved for a new trial, because the verdict was contrary to law and evidence and was excessive. The motion was overruled, and exception was taken.

At the trial the plaintiff testified : I got on the train at Raines station, Alabama, to ride to Oreburg, Georgia. I got to the depot at Raines station just before the train

v 89-46

left, and did not know whether I could get a ticket there or not. When the conductor came by, I paid him thirty-eight cents and told him I wanted to be carried to Oreburg. He said, " All right; I will stop there for you." The train was made of a good many freight-cars with a passenger-coach behind. It stopped in a cut about two hundred yards before reaching Oreburg. It was raining and had been raining all day; the ground was shoe-deep in mud. I did not get off there, expecting the train would stop at the platform at Oreburg. It did not do so; when it passed the platform it was going too fast for me safely to leave it. As we passed the station I went to the conductor and asked him to let me off. Said the conductor, " Do you want to get off here ?" I answered, " Yes, I told you I wanted to get off here." The conductor then said, " Why, G— damn you, why in the hell didn't you get off back yonder when the train stopped; I thought you got off there." I answered, " Because I paid to be put off at the station." The conductor then said, " Well, G— damn you, get off here." I said, " Well, stop the train." The conductor repeated, " Get off here." The train was running ten or fifteen miles an hour. We had got to the platform. I said, " Stop the train." The conductor said, " G— damn you, get off here," and with that he grabbed me by the arm and pushed me off the train. I fell first on my head and neck and then on my right hip in the mud; as soon as I hit the ground I lost my senses; from the effect of this fall I lost eight days from my work, worth $1 per day. I am now doing the same kind and getting the same wages I was before I was hurt. My hip was bruised, inflamed and bloodshot in a place as large as my hat.

A witness who claimed to have been on the train at the time in question, gave testimony corroborative of that of the plaintiff as to the conductor's words and

pushing the plaintiff off. He further testified that the trains very frequently do not stop at the platform, but just stop at the coal-chute, about two hundred yards from there, at which place the witness got aboard because he thought may be they would not stop at the platform. Another witness testified that the train was stopped in a cut about one hundred and fifty yards from the station; the coach was left in the cut, and the train was switched and a coal-car put in; it stayed there about five minutes; then it was attached to the coach and pulled rapidly past the station; about two hundred yards below the station it was moving at the rate of about sixteen miles an hour; this was between seven and eight o'clock in the evening. The witness found the plaintiff by hearing his groans in the dark; went to him and found him in an insensible condition; he was bleeding from a wound on the head, and his right hip so injured that witness had to carry him. He assisted him to his, witness's, house, where he lay for eight days suffering greatly. A platform belonging to the defendant is situated at Oreburg for the use of passengers in getting on and off trains, and the train stops there for that purpose. The platform is not covered, but is near a store which would afford a shelter.

The testimony of the defendant's conductor and brakeman, and of another witness who was on the train, tended to show, in brief, as follows: It is the custom of the defendant's accommodation-train, whenever there are no ladies to get off at Oreburg, to let passengers off and on at the coal-chute. On the day in question there were no lady passengers, and the train did not stop at the platform. After the train had passed it a short distance, the plaintiff went to the conductor and asked why he did not put him off at Oreburg, to which the conductor replied, he should have got off when they stopped. The plaintiff said the conductor would have

to back and let him off. The conductor replied he could not do that, as they were on a heavy down grade with a heavy train and a wet track, and that it would be impossible to back up. The plaintiff said, "By G——, I will get off any how," and with that he ran to the front platform and jumped off. The train was going about five or six miles an hour. The conductor did not leave his seat until the plaintiff jumped, but glanced through the window, and the plaintiff was heard to say, "By G——, I told you so," or some other boastful expression. From the way the plaintiff acted the conductor and brakeman judged that he was drunk. The conductor did not push him off, or even touch or make any attempt to do so. He jumped off of his own motion. They frequently carried a rough class of men from Alabama and the iron works up towards Rome.

DORSEY, BREWSTER & HOWELL and McCUTCHEN & SHUMATE, for plaintiff in error.

WRIGHT & HARRIS, *contra.*